UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION

| | |
|---|---|
| HEATHER SHELTON, on Behalf of Herself and All Others Similarly Situated, | ) ) ) CASE NO. 1:21-cv-00470 |
| Plaintiff, | ) ) ) |
| v. | ) JUDGE: ) ) MAGISTRATE JUDGE: |
| PAPPAS RESTAURANTS, INC. | ) ) |
| and | ) (JURY TRIAL DEMANDED) ) |
| PAPPAS RESTAURANT GROUP, LLC | ) ) |
| Defendants. | ) |

## PLAINTIFF'S COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. The case implicates Defendants Pappas Restaurants, Inc.'s and Pappas Restaurant Group, LLC's ("Defendants" collectively) violations of the Fair Labor Standards Act's ("FLSA") tip credit and subsequent underpayment of their employees at the federally mandated minimum wage rate and violations of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio Revised Code ("R.C.") § 4111.01, *et seq.* for Defendants' failure to pay Plaintiff and all similarly situated workers their earned minimum wages. Plaintiff brings this case as a collective action under the FLSA, 29 U.S.C. § 216(b) and pursuant to the OMFWSA, R.C. § 4111.14(K)(2).

2. Defendants pay their tipped employees, including servers and bartenders, below the minimum wage rate by taking advantage of the tip-credit provisions of the FLSA and, in Ohio, the OMFWSA. Under the tip-credit provisions, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers.

1

3. However, there are strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. § 203(m). An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id*. (stating that the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection."). That is, the employer must inform the employee: (1) of the amount of the cash wage that is to be paid to the tipped employee; (2) of the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

4. Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as management staff. *See Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal..."); *Portales v. MBA Inv. Co., LLC,* No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014) ("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA." (citing 29 U.S.C. § 203)); *Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

5. Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA and 50% of the Ohio minimum wage rate). *See* 29 U.S.C. § 203(m). The FLSA requires that employers comply with any State law that establishes a higher minimum wage than that established by the FLSA. *See* 29 U.S.C. § 218(a). Therefore, federal law requires that all Ohio

2

employers comply with the minimum wage standards set forth by Ohio law and limits the maximum allowable tip credit to 50% of the Ohio minimum wage rate. *See, e.g., Hanke v. Vinot Pinot Dining, LLC*, No. Civ. A. 2:15-cv-1873-SMM, Dkt. 51, at 4:6-11 (D. Ariz. Mar. 21, 2018) ("both the FLSA and AWA allow Arizona employers to take a maximum tip credit of [the amount of the State tip credit] against their minimum wage obligations to 'tipped employees.'")

6. Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation. *See Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017) (employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work.").

7. Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek. *See Marsh v. J. Alexander's, LLC,* 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Fast v. Applebee's Intern., Inc.,* 638 F.3d 872, 881 (8th Cir. 2011) (granting the DOL's 20% standard deference); *Driver v. AppleIllinois, LLC*, No. 06 Civ. 6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (the court indirectly

3

cast its imprimatur on the DOL's aforementioned dual-jobs regulation and Field Operations Handbook, citing both the "related to" standard in 29 C.F.R. § 531.56(e) and the 20% standard in § 30d00(e)); *Flood v. Carlson Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying defendant's motion to dismiss explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga., 2015) (". . . a reasonable interpretation of § 531.56(e) is that [Plaintiffs] would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties."); *Crate v. Q's Restaurant Group LLC*, 2014 WL 10556347, at *4 (M.D. Fla., 2014) ("[T]he Court concludes that the 20% rule clarifies the ambiguity contained in 29 C.F.R. § 531.56(e) by delineating how much time a tipped employee can engage in related, non-tip-producing activity before such time must be compensated directly by the employer at the full minimum wage rate.").

8. Defendants violated the FLSA and OMFWSA in the following respects:

   a. **Violation for failure to inform:** Defendants failed to correctly inform Plaintiff of the desire to rely on the tip credit to meet its minimum wage obligations. In fact, Defendants failed to inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

   b. **Violation for making illegal deductions that reduced the direct wage of Plaintiff below the minimum required hourly wage for tipped employees:** Plaintiff was required to purchase certain clothing to work for Defendants, which reduced her wages below the minimum hourly wage required for tipped employees.

   c. **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to, cleaning walls and ledges, cleaning pictures,

        cleaning light fixtures, cleaning windows, cleaning silverware, polishing glasses, polishing silverware, vacuuming and sweeping floors, and taking out trash.

    d. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week**: Plaintiff was required to perform greater than 20% of her time in performing non-tip producing side work, including, but not limited to, filling salt and peppers shakers, cleaning and stocking the serving line, cleaning tables, cleaning menus, making tea and coffee, cleaning soft drink dispensers and nozzles, cleaning underneath tables (removing gum), stocking ice, and rolling silverware.

9. As a result of these violations, Defendants have lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked. In other words, Defendants must account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

## SUBJECT MATTER JURISDICTION AND VENUE

10. This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et seq*. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this District, including many of the wrongs herein alleged.

## PARTIES AND PERSONAL JURISDICTION

12. Plaintiff Heather Shelton is an individual residing in Ohio. Her written consent to this action is attached hereto as Exhibit "A."

13. The FLSA Class Members are all current and former tipped employees who worked for Defendants for at least one week during the three-year period prior to the filing of this action to the present.

5

14. The Ohio Class Members are all current and former tipped employees who worked for Defendants in Ohio for at least one week during the three-year period prior to the filing of this action to the present.

15. The FLSA Class Members and the Ohio Class Members shall be collectively referred to as the "Class Members."

16. Defendant Pappas Restaurants, Inc., is a foreign for-profit corporation which does business in Ohio.

17. Defendant Pappas Restaurant Group, LLC is a domestic limited liability company.

18. Defendant Pappas Restaurants, Inc. at all times relevant to this action has had sufficient minimum contacts with the State of Ohio to confer personal jurisdiction. Said Defendant conducts business throughout Ohio. Furthermore, Defendant Pappas Restaurants, Inc. contracted with and employed Ohio residents, has Ohio customers, markets to residents of Ohio, and owns property in Ohio. Moreover, the violation of the law and harm committed against Plaintiff occurred in Ohio.

## COVERAGE

19. At all material times, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e) and R.C. § 4111.03(D)(3).

20. At all material times, Defendants have been employers within the meaning of 29 U.S.C. § 203(d) and R.C. § 4111.03(D)(2).

21. At all material times, Defendants were enterprises within the meaning of 29 U.S.C. § 203(r).

22. At all material times, Defendants have been enterprises engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

23. At all material times, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

24. At all material times, Defendants have operated as a "single enterprise" within the meaning of 29 U.S.C. § 203(r)(1). That is Defendants perform related activities through unified operation and common control for a common business purpose.

25. Defendants operate a nationwide chain of restaurants with the name "Pappadeaux Seafood Kitchen" under the control of the same senior level management. Indeed, the restaurants advertise themselves as a unified entity through the same website.

26. Defendants represent themselves to the public as one restaurant operating at multiple locations. They share employees, have a common management, pool their resources, operate from the same headquarters, have common ownership, and have the same operating name.

27. Defendants operate under a unified business model and part of that unified business model is the wage violations alleged in this Complaint.

## FACTS

28. Defendants operate a nationwide chain of restaurants under the trade name "Pappadeaux Seafood Kitchen" throughout the U.S. Defendants operate in Arizona, Alabama, Colorado, New Mexico, Ohio, Texas, and other states.

29. The Pappadeaux Seafood Kitchen restaurants are full service restaurants that employ waiters and bartenders to provide services to customers.

30. A waiter gathers orders from customers and delivers food and drinks to the customers.

31. A bartender makes various alcoholic beverages to customers.

32. Defendants pay their waiters and bartenders less than the federal minimum wage of $7.25 per hour and less than the minimum wage in Ohio.

33. Defendants attempted to utilize the tip credit to meet their minimum wage obligation to their waiters and bartenders, including the Plaintiff and Class Members.

34. Plaintiff Shelton worked for Defendants at the Pappadeaux Seafood Kitchen in Cincinnati, Ohio. She worked as waitress and was paid less than the minimum wage. She worked for Defendants from approximately January 2012 and August 2020.

35. The tip credit has a harmful effect on workers that threatens the health of the economy. Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter to large corporations operating restaurants, advising of the ills of using the tip credit. (*See* https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited July 13, 2021). The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work**. As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor.

(*Id*.) (Emphasis in original.)

36. Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer that seeks to utilize the trip credit to meet its minimum wage obligations.

37. In this case, Defendants did not satisfy the strict requirements to use the tip credit. Defendants maintained a policy and practice whereby they failed to provide the Plaintiff and the Class Members with the statutorily-required notice regarding (1) the amount of the cash wage that was to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee

would be increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

38. Defendants also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiff and the Class Members were engaged in dual occupations while being compensated at the tip credit rate. While performing these non-tip generating duties, they did not interact with customers and could not earn tips.

39. These duties include but are not limited to the following: cleaning walls and ledges, cleaning pictures, cleaning light fixtures, cleaning windows, cleaning silverware, polishing glasses, polishing silverware, vacuuming and sweeping floors, and taking out trash, amongst other activities, that were not related to her tipped duties.

40. Defendants also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent, performing non-tip producing side work related to the employees' tipped occupation.

41. Specifically, Defendants maintained a policy and practice whereby tipped employees, were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to filling salt and peppers shakers, cleaning and stocking the serving line, cleaning tables, cleaning menus, making tea and coffee, cleaning soft drink dispensers and nozzles, cleaning underneath tables (removing gum), stocking ice, and rolling silverware.

42. Further, Defendants required Plaintiff and the Class Members to perform non-tipped producing work prior to the opening of the restaurant and after the restaurant closed. Indeed, Defendants required the Plaintiff and Class Members to arrive prior to the restaurants opening for

business when there were no customers and no opportunity to earn tips, to perform manual labor cleaning and setup duties. Likewise, Defendants required the Plaintiff and Class Members to remain at the restaurant after it had closed for business and there was no opportunity to earn tips, to perform manual labor cleaning duties. At times, they spent between 30 minutes and two hours performing work before the restaurant was open and the same amount of time after the restaurant was closed performing non-tipped producing work.

43. However, Defendants did not pay their tipped employees the full minimum wage rate for this work. The duties that Defendants required Plaintiff and the Class Members to perform were duties that are customarily assigned to "back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

44. During Plaintiff's and the Class Members' employment, checklists were posted in Defendants' restaurants with numerous non-tipped duties that tipped employees were required to perform, in addition to serving customers.

45. When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

46. Indeed, Defendants did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

47. Defendants did not track or record the amount of time their tipped employees spent performing non-tipped work, even though Defendants were capable of doing so. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track to the specific tasks for Plaintiff or the Class Members.

48. Defendants use a point-of-sale system to record hours worked by their tipped employees. Defendants then analyze the information collected by this system, including the labor

costs at each of the restaurants. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track to the specific tasks for Plaintiff and the Class Members.

49. In the point-of-sale system, Defendants can create different "clock-in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

50. However, Defendants did not allow their waiters and bartenders to clock in at the full minimum wage rate when performing non-tipped work described in this Complaint.

51. Defendants' managers at the restaurants were eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets, which created an incentive to keep the amount paid to tipped employees low.

52. Moreover, Defendants violated the FLSA by not even paying the minimum "tipped" hourly rate. Defendants required their tipped employees to pay for items for their uniform, including shirts, pants, and shoes. These clothing items were required to perform work for Defendants and were primarily for the benefit and convenience of Defendants. The costs for these items were not reimbursed by Defendants.

53. Because Defendants paid their tipped employees at the minimum of $2.13 per hour (or the state's respective tipped wage), any week in which a tipped employee was required to pay for work related expenses for Defendants' business, their compensation fell below the minimum wage rate, thereby negating Defendants' entitlement to claim the tip credit.

54. In other words, by requiring Plaintiff and the Class Members to pay for these work-related expenses, their hourly rates of pay were reduced by the amount of these uniform costs. As

a result, they were not even paid the minimum hourly rate necessary for Defendants to claim the tip credit.

55. Because Defendants violated the requirements to claim the tip credit, Defendants lost the right to take a credit toward their minimum wage obligation to Plaintiff and the Class Members.

56. As such, Plaintiff and the FLSA Class Members were not compensated at the federally-mandated minimum wage.

57. Defendants know or should have known that their policies and practices violate the law, and Defendants have not made a good faith effort to comply with the FLSA. Rather, Defendants knowingly, willfully, and/or with reckless disregard of the law carried and continue to carry out their illegal pattern and practice regarding their tipped employees. Defendants' method of paying Plaintiff and the Class Members was not based on a good faith and reasonable belief that its conduct complied with the law.

**REVISED FIELD OPERATIONS HANDBOOK AND NEW DUAL JOBS REGULATION**

58. On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27 which provided a standard for interpreting the dual jobs regulation that was different than the "80/20" rule that had existed at the time. However, nearly every court to have considered this opinion letter held that the opinion letter was not entitled to any deference. *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Miss. 2019).

59. Therefore, the Department of Labor announced its intention to revise the dual jobs regulation found in 29 C.F.R. § 531.56(e) and issued a notice of proposed rulemaking on October 8, 2019. (*See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa.) After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021 ("2020

Tip Final Rule"). (https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa.) However, the Department of Labor has since delayed the effective date of the Final Rule to December 31, 2021 so that it can reconsider whether to implement the Final Rule at all. (https://www.dol.gov/agencies/whd/flsa/tips.)

60. After delaying the effective date of the 2020 Tip Final Rule. (https://www.dol.gov/agencies/whd/flsa/tips), on June 21, 2021, the Department of Labor announced "a notice of proposed rulemaking to limit the amount of non-tip producing work that a tipped employee can perform when an employer is taking a tip credit." (Exhibit "B"). The Department of Labor published its notice of proposed rulemaking on June 23, 2021. (*See* https://www.federalregister.gov/documents/2021/06/23/2021-13262/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal.)

61. Under the proposed rule, "if a tipped employee performs non-tipped, directly supporting work for a continuous period of time that exceeds 30 minutes, the employer cannot take a tip credit for the entire period of time the non-tipped work is performed." (*Id*.)

62. Here, Defendants illegally required Plaintiff and the Class Members to perform non-tip producing work for an excessive period of time. That is because Defendants required Plaintiff and the Class Members to perform non-tipped work 31 minutes to two hours before the restaurants were open for business or after they were closed, when the restaurants did not have customers and there was no opportunity to earn tips. During this time, Defendants paid below the minimum wage rate and forced the Plaintiff and Class Members to perform non-tip producing duties, as noted above.

63. Given that Defendants failed to comply with the requirements to take the tip credit, Defendants have lost the ability to claim the tip credit and owe Plaintiff and the Class Members pay at the minimum wage rate of $7.25 per hour for all hours they worked for Defendants.

## COLLECTIVE ACTION ALLEGATIONS

64. Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as waitstaff, including waiters, servers, and those in substantially similar positions, for at least one week during the three-year period prior to the commencement of this action to the present.

65. Plaintiff has actual knowledge, through conversations with her co-workers that a class of similarly situated workers exists who have been subjected to the same policies of Defendants with respect to the payment of the minimum wage.

66. The FLSA Class Members are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

67. Like Plaintiff, the FLSA Class Members performed substantial work that was unrelated to their tip producing duties.

68. Further, the FLSA Class Members were, like Plaintiff, not properly informed of Defendants' intent to utilize the tip credit.

69. Moreover, the FLSA Class Members were also subject to deductions and expenses that dropped their compensation below the minimum wage.

70. Plaintiff and the FLSA Class Members all labored under the same corporate structure, the same corporate policies, the same corporate chain of command, and pursuant to the rules in the same company handbook.

71. The names and address of the FLSA Class Members of the collective action are available from Defendants' records. To the extent required by law, notice will be provided to these

individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

72. Although the exact amount of damages may vary among the FLSA Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

73. As such, the class of similarly situated Class Members is properly defined as follows:

**All current and former tipped employees who worked for Defendants for at least one week during the three-year period prior to the filing of this action to the present.**

## OHIO COLLECTIVE ACTION ALLEGATIONS

74. Plaintiff brings this action as a collective action on behalf of the Ohio Class Members which is comprised of the following:

**All current and former tipped employees who worked for Defendants for at least one week in Ohio during the three-year period prior to the filing of this action to the present.**

75. Plaintiff has actual knowledge, through conversations with her co-workers that a class of similarly situated workers exists who have been subjected to the same policies of Defendants with respect to the payment of the minimum wage.

76. The Ohio Class Members are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the OMFWSA.

77. Like Plaintiff, the Ohio Class Members were not given proper notice of the tip credit provisions, were subject to the same illegal deductions from their wages and tips, and performed substantial work that was unrelated to their tip producing duties.

78. Further, the Ohio Class Members were, like Plaintiff, not properly informed of Defendant's intent to utilize the tip credit.

79. Moreover, the Ohio Class Members were also subject to deductions and expenses that dropped their compensation below the minimum wage.

80. Plaintiff and the Ohio Class Members all labored under the same corporate structure, the same corporate policies, the same corporate chain of command, and pursuant to the rules in the same company handbook.

81. The names and address of the Ohio Class Members of the collective action are available from Defendant's records. To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

82. Although the exact amount of damages may vary among the Ohio Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARD ACT
### FAILURE TO PAY THE MINIMUM WAGE

83. Plaintiff incorporates the preceding paragraphs by reference.

84. This count arises from Defendants' violation of the OMFWSA failure to pay minimum wages to Plaintiff and the Ohio Class Members.

85. During their employment with Defendants, Plaintiff and the Ohio Class Members were not exempt from the minimum wage provisions of the OMFWSA.

86. Defendants paid Plaintiff and the Ohio Class Members below the minimum wage rate in Ohio, in violation of R.C. § 4111.02.

COUNT II
VIOLATION OF THE FAIR LABOR STANDARDS
FAILURE TO PAY THE MINIMUM WAGE

87. Plaintiff incorporates the preceding paragraphs by reference.

88. This count arises from Defendants' violation of the FLSA in connection with their failure to pay the minimum wages. *See* 29 U.S.C. § 206.

89. Plaintiff and the FLSA Class Members were paid hourly rates less than the minimum wage while working for Defendants.

90. Plaintiff and the FLSA Class Members were not exempt from the minimum wage requirements of the FLSA.

91. Defendants' failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff and the FLSA Class Members being paid less than the Federal minimum wage rate. Defendants' violation of the FLSA was willful.

92. Defendants' practice of failing to inform its employees of its intent to rely on the tip credit to meets its minimum wage obligations violates the FLSA.

93. Defendants' failure to pay the minimum wage to Plaintiff and the FLSA Class Members, in violation of the FLSA was willful and not based on a good faith belief that their conduct did not violate the FLSA. To foregoing conduct, as alleged, constitutes a willful violation within the meaning of the FLSA. 29 U.S.C. § 255(a).

**WAGE DAMAGES SOUGHT**

94. Plaintiff and the FLSA Class Members are entitled to receive the difference between the Federal minimum wage of $7.25 an hour and the tip credit adjusted minimum wage for each hour they worked.

95. Plaintiff and the Ohio Class Members are entitled to receive the difference between the Ohio minimum wage rate and the tip credit adjusted minimum wage for each hour they worked.

96. Plaintiff and the Class Members are entitled to reimbursement for all illegal deductions.

97. Plaintiff and the Class Members are entitled to reimbursement for all work-related expenses they paid.

98. Plaintiff and the Class Members are entitled to liquidated damages.

99. Plaintiff and the Class Members are also entitled to recover their attorney's fees and costs, as required by the FLSA and Ohio law.

## JURY DEMAND

100. Pursuant to her rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

101. For these reasons, Plaintiff respectfully requests that judgment be entered in her favor awarding her and the Class Members:

   a. Issue an order permitting this litigation to proceed as a collective action;

   b. Order prompt notice to all class members that this litigation is pending and that they have the right to "opt in" to this litigation pursuant to 29 U.S.C. § 216(b) and R.C. § 4111.14(K);

   c. Minimum wage compensation unadulterated by the tip credit;

   d. Liquidated damages equal in amount to the unpaid wages found due to Plaintiff and the class under the FLSA;

   e. Liquidated damages calculated as an additional two times the amount of unpaid minimum wages found due to Plaintiff and the class under the OMFWSA;

   f. All misappropriated funds including all tips, expenses, and wages wrongfully withheld;

   g. An order requiring Defendants to correct their pay practices going forward;

    h. Reasonable attorney's fees, costs, and expenses of this action;

    i. Pre and post judgment interest; and

    j. Such other and further relief to which Plaintiff and the Class Members may be entitled, both in law and in equity.

Respectfully submitted,

/s/ Anthony J. Lazzaro
Anthony J. Lazzaro (0077962)
Lori M. Griffin (0085241)
Alanna Klein Fischer (0090986)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com
lori@lazzarolawfirm.com
alanna@lazzarolawfirm.com

Don J. Foty (will file for admission pro hac vice)
HODGES & FOTY, L.L.P.
Texas State Bar No. 24050022
4409 Montrose Blvd., Suite 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
dfoty@hftrialfirm.com

Attorneys for Plaintiff and Class Members

## JURY DEMAND

Plaintiff demands a trial by jury on all eligible claims and issues.

/s/ Anthony J. Lazzaro
One of the Attorneys for Plaintiff