UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| HEATHER SHELTON, on Behalf of Herself And All Others Similarly Situated,<br>    Plaintiff,<br><br>vs.<br><br>PAPPAS RESTAURANTS, INC., *et al*.,<br>    Defendants. | Case No. 1:21-cv-470<br><br>Dlott, J.<br>Litkovitz, M.J.<br><br><br>REPORT AND RECOMMENDATION |

This matter is before the Court on defendant Pappas Restaurants, Inc.'s (Pappas) motion to compel arbitration and dismiss this action (Doc. 19), plaintiff's memorandum in opposition (Doc. 20), and Pappas's reply memorandum (Doc. 21). Plaintiff Heather Shelton initiated this purported collective action on behalf of herself and all others similarly situated pursuant to 29 U.S.C. § 216(b) and Ohio Revised Code 4111.14(K)(2) alleging that her former employer, Pappas,[1] violated the Fair Labor Standards Act (FLSA) and the Ohio Minimum Fair Wage Standards Act (OMFWSA) by failing to correctly inform her how the tip credit would impact the cash wage to be paid to tipped employees, making illegal deductions from direct wages, and requiring performance of excessive non-tipped work. (Doc. 1 at PAGEID 1-5). Pappas moved to compel arbitration and dismiss this action. (Doc. 19).

I.  Background

   A.  Facts

Pappas operates a nationwide chain of restaurants under the name "Pappadeaux Seafood Kitchen." According to the complaint, Shelton worked as a server at the Cincinnati, Ohio

---

[1] Plaintiff named Pappas Restaurants, Inc. and Pappas Restaurant Group, LLC as defendants in this action. (Doc. 1). Defendant Pappas Restaurants, Inc. acknowledges that it was Shelton's employer and claims it "is in no way affiliated with Defendant Pappas Restaurant Group, LLC." (Doc. 19-1 at PAGEID 93, n. 1). Shelton does not refute this claim (Doc. 20), and Pappas Restaurant Group, LLC has not been served nor made an appearance in this case. Thus, Pappas Restaurants, Inc. (Pappas) is the only defendant properly before the Court.

location from approximately 2012 through 2020.² She filed this purported collective action on behalf of all similarly situated current and former tipped employees employed by Pappas for at least one week during the three-year period prior to the filing of this action. (Doc. 1 at PAGEID 15). She alleges that Pappas improperly utilized the tip credit to pay tipped employees less than the required federal and Ohio minimum wage. She further alleges that Pappas failed to provide proper notice regarding application of the tip credit, improperly reduced wages, and required tipped employees to perform non-tip producing tasks unrelated to their tipped occupations and excessive non-tip producing tasks related to their tipped duties.

In 2009, Pappas implemented an alternative dispute resolution program. (Doc. 18 at PAGEID 73). As part of this program, Pappas required its employees—including the putative members of the collective action pled here—to execute a one-page "Mutual Agreement to Arbitrate." (*Id.* at PAGEID 73-74). On June 21, 2014, Shelton signed the arbitration agreement, which provides in relevant part:

> This Mutual Agreement to Arbitrate ("Agreement") is for the purpose of resolving claims by arbitration and is mutually binding upon both me and my employer Pappas Restaurants, Inc. ("Company"), and any other entity owned, controlled, or managed by the Company. The following contains the terms and conditions of the binding Agreement which I agree to entirely.
>
> Introduction:
> I agree to arbitrate and resolve any and all employment-related disputes between the Company and affiliate entities and myself. I understand that the consideration for this Agreement is my employment, or continued employment, with the Company and the different benefits that go along with the employment with the Company, including the promises and commitment made in this Agreement. . . . I understand that arbitration is for the purpose of resolving disputes between me and the Company. As such, I agree that I am waiving my right to file, participate or proceed in class or collective actions (including a Fair Labor Standards Act ("FLSA") collective action), including but not limited to receiving notice from a pending collective action. Therefore, I agree that I cannot file a collective action under this Agreement, unless agreed upon by me and the Company in writing.

---

² Pappas' Director of Human Resources declared that Pappas employed Shelton from approximately June 21, 2014 to January 19, 2021. (Doc. 18 at PAGEID 73).

* * *

Arbitration Procedure:
For purposes of this Agreement, arbitration shall be conducted before a neutral arbitrator agreed upon by the Parties, independent from any organization; such arbitration shall be conducted under the American Arbitration Association ("AAA") National Rules for the Resolution of Employment Disputes, unless the Parties agree to use other rules or procedures. Should the Parties be unable to agree upon a neutral arbitrator for whatever reason, then the Parties shall agree upon a neutral organization (AAA, JAMS, or National Arbitration Forum) to ensure that the Parties' commitment to binding and final arbitration of their employment disputes is fulfilled; such arbitration shall be conducted under the rules of that neutral organization, unless the Parties agree to use other rules or procedures. The Party seeking to arbitrate a dispute must submit written notice of the claim to the mutually selected arbitrator or to a neutral arbitration organization (in the event the Parties have not agreed on a neutral arbitrator) within the time period prescribed by the statute or common law cause of action under which the claim is brought. The Parties under this Agreement will have full rights to legal representation in the arbitration process.

* * *

Requirements before Initiating Arbitration:
I agree that I will exhaust the Company's informal remedies, open door policy, and/or alternative dispute resolution procedures that the Company has in-place informally or formally before proceeding to arbitration.
I UNDERSTAND THAT THIS AGREEMENT IS EFFECTIVE AS OF FEBRUARY 1, 2009. I ALSO UNDERSTAND THAT IT RESTRICTS MY RIGHT TO SUE MY EMPLOYER AND APPLIES TO ANY EMPLOYMENT DISPUTE(S) AS STATED HEREIN INCLUDING THOSE THAT OCCURRED BEFORE FEBRUARY 1, 2009.

I HAVE READ THE AGREEMENT ABOVE CAREFULLY AND HAVE BEEN GIVEN THE OPPORTUNITY TO CONSIDER THE TERMS AND EFFECT.

(Doc. 18-1 at PAGEID 75).

### B. Procedural Posture

Shelton initiated this putative collective action without requesting or receiving Pappas's written agreement. (Doc. 18 at PAGEID 73). Pappas filed the instant motion to compel arbitration and dismiss this action based on the terms of the arbitration agreement Shelton and

any opt-in collective action members signed as a condition of employment or continued employment. (Doc. 19).

Pappas further requests that Shelton be required to pay its fees and costs related to filing the motion to compel pursuant to 28 U.S.C. § 1927 because Shelton unreasonably and vexatiously multiplied proceedings. (Doc. 19-1 at PAGEID 106-07). Pappas reports that its counsel emailed Shelton's counsel on July 26, 2021, attached Shelton's executed arbitration agreement, and requested that Shelton agree to stay this case and proceed to arbitration. (Doc. 17 at PAGEID 70). According to Pappas, Shelton's counsel failed to respond to counsel's email or to subsequent follow-up correspondence, necessitating the filing of the instant motion. (*Id.* at PAGEID 71).

Shelton does not dispute this series of events. Instead, Shelton contends that the arbitration agreement lacks the specificity and mutuality required of a valid arbitration agreement. (Doc. 20). Shelton further contends that Pappas's fees and costs request should be rejected because prevailing employers in FLSA actions are not entitled to attorneys' fees and costs. (Doc. 20 at PAGEID 128-29). Finally, Shelton requests that, if the Court grants Pappas's motion to compel arbitration and dismiss this action, the Court equitably toll the statute of limitations. (*Id.* at PAGEID 126-27).

**II. Standard of Review**

The Federal Arbitration Act ("FAA") allows for a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2); s*ee also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). The goal of the FAA is to "ensure that private agreements to arbitrate are enforced according to their terms." *Volt Info Scis., Inc v. Bd. of Tr. of Leland Stanford , Jr. Univ.*, 489 U.S. 468, 479

(1989). The Supreme Court has emphasized that the FAA "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted.'" *Epic Sys. Corp.*, 138 S. Ct. at 1621 (emphasis in original) (quoting *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013)); *see also Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 583 (6th Cir. 2021) (national policy favoring arbitration requires courts to rigorously enforce arbitration agreements as written).

In reviewing a motion to compel arbitration, courts should "treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the nonmoving party." *Great Am. Ins. Co. v. Gemma Power Sys., LLC*, No. 1:18-cv-213, 2018 WL 6003968, at *2 (S.D. Ohio Nov. 15, 2018) (quoting *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003)). In order to defeat a motion to compel arbitration, the nonmovant has the burden to "show a genuine [dispute] of material fact as to the validity of the agreement to arbitrate." *Danley v. Encore Capital Grp., Inc.*, 680 F. App'x 394, 397 (6th Cir. 2017) (quoting *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)).

As previously explained:

> "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. "[T]here is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"

*H.H. Franchising Sys., Inc. v. Pawson*, No. 1:17-cv-368, 2018 WL 1456131, at *3 (S.D. Ohio

5

Mar. 23, 2018) (quoting *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004)).

In determining the enforceability of an arbitration agreement, courts apply state law of contract formation. *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016). The parties agree that Ohio law applies here.

### III. Arbitration Should Be Compelled

To compel arbitration, Pappas must demonstrate that a valid agreement to arbitrate exists between the parties and that Shelton's claims fall within the scope of the arbitration agreement. *Javitch*, 315 F.3d at 624. Neither party contests that Shelton's claims fall within the scope of the agreement as the agreement clearly covers "any and all employment-related disputes" and specifically includes "state, federal or local" claims alleging violations of the Fair Labor Standards Act. (Doc. 18-1 at PAGEID 75). Thus, the issue here is whether, applying Ohio law, the Mutual Agreement to Arbitrate creates a valid agreement to arbitrate.

"Under Ohio law, '[e]ssential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'" *Tagnetics, Inc. v. Kayser*, 842 F. App'x 969, 972 (6th Cir. 2021) (quoting *Williams v. Ormsby*, 966 N.E.2d 255, 258 (Ohio 2012)). Mutual assent requires that the parties objectively manifest an intent to be bound. *Jones v. U-Haul Co. of Massachusetts & Ohio Inc.*, 16 F. Supp. 3d 922, 933 (S.D. Ohio 2014) (citing *McSweeney v. Jackson*, 691 N.E.2d 303, 308 (Ohio Ct. App. 1996)). "A mutual agreement by both parties to submit a claim to arbitration is sufficient consideration under Ohio law." *Uszak v. AT&T Mobility Servs. LLC*, 658 F. App'x 758, 763-64 (6th Cir. 2016) (citing *Dantz v. Am. Apple Group, LLC*, 123 F. App'x 702, 708-09 (6th Cir. 2005)). Employment or

continued employment with that employer also constitutes sufficient consideration for an arbitration agreement. *Nealey v. Heritage Oaks Mgmt. Enters. USA, LLC*, No. 2:18-cv-1759, 2020 WL 2507332, at *3 (S.D. Ohio May 15, 2020) (quoting *Porter v MC Equities, LLC*, No. 1:12-cv-1186, 2012 WL 3778973, at *6 (N.D. Ohio Aug. 30, 2012)); *see also Dantz v. Am. Apple Grp., LLC*, 123 F. App'x 702, 708 (6th Cir. 2005).

The parties do not challenge the facts that Pappas offered, and Shelton accepted by her signature, the terms of the arbitration agreement. Neither party contests another party's contractual capacity or the legality of agreements to arbitrate. In addition, the mutual obligations to arbitrate and Shelton's employment or continued employment with Pappas satisfy the consideration requirement. Rather, the dispute here involves the manifestation of mutual assent to be bound. Shelton contends that the lack of defined arbitration procedures, including a defined "tie breaker" if the parties are unable to agree to an arbitrator, indicates an unenforceable "agreement to agree" in the future rather than a currently enforceable contract. (Doc. 20 at PAGEID 113-20). The Court disagrees.

"When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Tagnetics*, 842 F. App'x at 973 (quoting *Transtar Elec. v. A.E.M. Elec. Servs. Corp.*, 16 N.E.3d 645, 648 (Ohio 2014)). The first sentence of the one-page Mutual Agreement to Arbitrate specifically states, "This Mutual Agreement to Arbitrate ("Agreement") is for the purpose of resolving claims by arbitration *and is mutually binding upon both me and my employer Pappas Restaurants, Inc.*" (Doc. 18-1 at PAGEID 75 (emphasis added)). At the bottom of the page, the agreement provides (in capital letters), "I UNDERSTAND THAT THIS AGREEMENT IS EFFECTIVE AS OF FEBRUARY 1, 2009 . . . AND APPLIES TO ANY EMPLOYMENT DISPUTE(S) AS STATED HEREIN INCLUDING

7

THOSE THAT OCCURRED BEFORE FEBRUARY 1, 2009." (*Id.*) Thus, the plain language of the arbitration agreement clearly indicates a present and mutual intent to bound by the agreement.

Despite the language of the agreement, Shelton contends that the arbitrator must be more specifically identified or the arbitration agreement is invalid. That is not an accurate statement of the applicable law. While it is true that "the parties must have a 'meeting of the minds as to the essential terms of the agreement,'" *Uszak*, 658 F. App'x at 764 (quoting *Campanella v. Commerce Exch. Bank*, 745 N.E.2d 1087, 1095 (Ohio Ct. App. 2000)), "[i]n Ohio case law, the 'meeting of the minds' concept is used interchangeably with the concept of 'mutual assent.'" *Schlaegel v. Howell*, 42 N.E.3d 771, 777 (Ohio Ct. App. 2015) (citing *Advance Sign Group, LLC v. Optec Displays, Inc.,* 722 F.3d 778, 784 (6th Cir. 2013)). "Put another way, 'a party cannot be bound to a contractual obligation unless the character of his obligations is fixed with some certainty.'" *Adams v. Karl*, No. 2:13-CV-894, 2016 WL 7210920, at *4 (S.D. Ohio Dec. 13, 2016) (quoting 17 Ohio Jur. 3d Contracts § 40).

In the case at bar, the obligations of both parties are fixed with sufficient certainty. Both Pappas and Shelton agreed to arbitrate "all employment-related disputes" including those specifically delineated. (Doc. 18-1 at PAGEID 75). As far as identifying the arbitrator, the agreement requires that the arbitration "shall be conducted under the American Arbitration Association ("AAA") National Rules for the Resolution of Employment Disputes" unless both parties agree to use other rules. (*Id.*) A "neutral arbitrator agreed upon by the parties" will conduct the arbitration. (*Id.*) If the parties fail to agree to a neutral arbitrator, "then the Parties shall agree upon a neutral organization (AAA, JAMS, or National Arbitration Forum)." (*Id.*)

"The fact that an agreement to arbitrate leaves for later negotiations the selection of the particular arbitrator does not render that agreement so vague as to be unenforceable." *Hunt v. Moore Bros., Inc.*, 861 F.3d 655, 659 (7th Cir. 2017). Indeed, the FAA specifically provides that if an arbitration agreement fails to provide a method for determining the arbitrator "or if for any other reason there shall be a lapse in the naming of an arbitrator . . . the court shall designate and appoint an arbitrator . . . who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein." 9 U.S.C. § 5. "This tells us that arbitration clauses remain enforceable if for 'any' reason there is 'a lapse in the naming of an arbitrator.'" *Green v. U.S. Cash Advance Ill., LLC*, 724 F.3d 787, 791 (7th Cir. 2013).

Shelton argues that "[t]he Seventh Circuit has held that when the arbitral forum has not been agreed upon, simply having the court appoint an arbitrator cannot save the agreement. *Jackson [v. Payday Financial, LLC]*, 764 F.3d [765,] 780 [(7th Cir. 2014)] ('the court cannot save the arbitral process simply by substituting an arbitrator')." (Doc. 20 at PAGEID 122). Shelton's selective quotation is intentionally misleading and borders on misrepresentation. The Seventh Circuit actually said, "The arbitration clause here is void not simply because of a strong possibility of arbitrator bias, but because it provides that a decision is to be made under a process that is a sham from stem to stern. . . . Under these circumstances, the court cannot save the arbitral process simply by substituting an arbitrator." *Jackson*, 764 F.3d at 779-80. Contrary to Shelton's implication, the Seventh Circuit favorably quotes both section 5 of the FAA and *Green* in reaching its decision in *Jackson*. *Id.* at 780 ("This case is therefore distinctly different from the situation that we faced in *Green v. U.S. Cash Advance Illinois, LLC*, 724 F.3d 787 (7th Cir. 2013).").

9

Shelton next contends that Pappas "can simply prevent [Shelton] from ever recovering the wages owed to her by not agreeing to any arbitrator and by not agreeing to an arbitral organization" for any reason. (Doc. 20 at PAGEID 115). At least one court found that this contention "does not even rise to the level of being a specious argument, as it lacks even a measure of plausibility." *Hunt v. Moore Bros., Inc.*, No. 15-cv-0433-MJR-SCW, 2016 WL 9454071 (S.D. Ill. Feb. 5, 2016), *aff'd by Hunt*, 861 F.3d at 651. As detailed above, this contention ignores section 5 of the FAA, which specifically empowers the Court to appoint an arbitrator where an otherwise enforceable arbitration agreement lacks one. In sanctioning the party making the argument, the Court, in *Hunt*, explained:

> Were the plaintiff correct, any party which wished to circumvent arbitration need only stubbornly avoid all attempts to reach an agreement [on arbitrator selection], and its wish would be granted. The court would have to bend to the resisting party's wishes. Such an interpretation would vitiate arbitration clauses in contracts. Alternatively, it would require arbitration clauses to contain a toxic level of specificity (including the naming of specific arbitrators), which would likely result in claims of unconscionability (given that the employer would be the one selecting future arbitrators). This is not a reasonable conclusion given over 90 year of a "liberal federal policy favoring arbitration agreements." *Moses Cone Mem. Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983).

*Id.* at *4.[3]

---

[3] To the extent that Shelton implies that FLSA claims cannot be subject to arbitration agreements, courts uniformly disagree. *See Epic Sys. Corp. v. Lewis*, 138 S.Ct. at 1626 ("[I]t turns out that '[e]very circuit to consider the question' has held that the FLSA allows agreements for individualized arbitration.") (quoting *NLRB v. Alternative Entm't, Inc.*, 858 F.3d 393, 413 (6th Cir. 2017) (opinion of Sutton, J.); *Gaffers v. Kelly Serv., Inc.*, 900 F.3d 293, 296 (6th Cir. 2018) (For FLSA claims, "employees who do not sign individual arbitration agreements are free to sue collectively, and those who do sign individual arbitration agreements are not."); *Does 1-2 v. Déjà Vu Serv., Inc.*, 925 F.3d 886, 897 (6th Cir. 2019) ("[T]he FLSA's collective action guarantees do 'not displace the Arbitration Act's requirement that we enforce the employees' agreements as written.'") (quoting *Gaffers*, 900 F.3d at 296)); *Holder v. A&L Home Care and Training Ctr.*, ___ F. Supp. 3d ___, 2021 WL 3400654, at *8 (S.D. Ohio 2021) ("The collective action provision of the FLSA does not displace the requirement that courts enforce employees' [arbitration] agreements as written.").

Accordingly, Shelton and Pappas entered into a valid arbitration agreement. The parties do not dispute that the instant claims fall within the scope of the agreement. Thus, arbitration should be compelled.

## IV. Dismissal or Stay

Having concluded that the arbitration agreement should be enforced, the Court must determine if this matter should be stayed pending arbitration or dismissed. The FAA requires that a court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . ." 9 U.S.C. § 3.[4] "Some courts read the section's use of the word "shall" to mean that courts lack discretion to issue a dismissal when a party seeks a stay . . . but [Sixth Circuit] unpublished cases have upheld dismissals." *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 836-37 (6th Cir. 2021) (citing *Katz v. Cellco P'ship*, 794 F.3d 341, 345–47 (2d Cir. 2015) and *Anderson v. Charter Commc'ns, Inc.*, 860 F. App'x 374, 379-80 (6th Cir. 2021) and noting that a "circuit split exists on this question."). In unpublished decisions, the Sixth Circuit has joined the First, Fifth, Eighth and Ninth Circuits which "have adopted a 'judicially-created exception' to § 3's stay requirement, one that gives district courts discretion to 'dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration.'" *Anderson*, 860 F. App'x at 380 (quoting *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70

---

[4] The FAA "provides two routes by which a party may invoke arbitration[,] 9 U.S.C. §§ 3-4." *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 836 (6th Cir. 2021). Pappas does not indicate whether it moved to compel arbitration under section three or section four. (Doc. 19 at PAGEID 91). The Court will proceed under section three because "[s]ection 3 addresses motions arising in a case like this one in which a *defendant* seeks arbitration of 'any issue' pending in an *existing* federal suit," and section four "allows a *plaintiff* to file a contract claim seeking specific performance of an arbitration contract." *Boykin*, 3 F.4th at 836-37 (quoting 9 U.S.C. § 3).

11

(8th Cir. 2011))[5]; *see also De Angelis v. Icon Entm't Grp. Inc.*, 364 F. Supp. 3d 787, 797 (S.D. Ohio 2019); *Braxton v. O'Charley's Restaurant Properties, LLC*, 1 F. Supp. 3d 722, 729 (W.D. Ky. 2014) (the Sixth Circuit follows the approach that a court may dismiss the action if all claims in the suit will be referred to arbitration); *Napier v. W. Chester Hosp., LLC*, No. 1:18-cv-00234, 2019 WL 1317859, at *2 (S.D. Ohio Mar. 22, 2019) ("The Court is within its discretion to dismiss a case where all claims are subject to arbitration.") (citing *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000)); *Belmont Med. Care, LLC v. Cmty. Ins. Co.*, No. 2:18-cv-968, 2019 WL 1676003, at *6 (S.D. Ohio Apr. 17, 2019) (same).

"These Circuits rely on an efficiency rationale, reasoning that 'retaining jurisdiction and staying the action will serve no purpose' when the Court has found all of the plaintiff's claims to be arbitrable." *Anderson*, 860 F. App'x at 380 (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). However, "unlike a stay, the dismissal allows an appeal from an order favoring arbitration." *Id.* at 379-80.

In this case, Pappas requests that this action be dismissed. (Doc. 19 at PAGEID 91). Shelton requests that it be stayed pending arbitration. (Doc. 20 at PAGEID 16). Neither party disputes that, if a valid arbitration agreement exists, all claims alleged fall within the scope of that agreement. Thus, in the interest of consistency within this District and Circuit, dismissal without prejudice, rather than a stay of proceedings pending the conclusion of arbitration, is appropriate. *See Anderson*, 860 F. App'x at 380 and *Napier*, 2019 WL 1317859, at *3.

---

[5] In *Anderson*, the Court further questioned, "Which side of this split has the better argument? And do our cases already put us on the side that allows district courts to dismiss a suit? We need not answer these questions here." 860 F. App'x at 380.

V.  **Equitable Tolling**

Having recommended dismissal, Shelton's request that the Court equitably toll the statute of limitations (Doc. 20 at PAGEID 126) must be resolved. "The doctrine of equitable tolling allows courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000)). It is "used sparingly by federal courts" and requires the party seeking equitable tolling to prove that she is entitled to it. *Id.* at 784. Negligence and excusable neglect are insufficient, but the Sixth Circuit has suggested, in the employment context, that missing deadlines due to attorney drug use or mental illness "might constitute an extraordinary circumstance that warrants equitable tolling." *Id.*

In support of equitable tolling, Shelton relies heavily on a case in which a court equitably tolled an FLSA statute of limitations for opt-in plaintiffs who had filed consent forms with the court because evidence indicated that a significant number of opt-in plaintiffs never consented to the arbitration agreement on which the court relied to dismiss the case. (Doc. 20 at PAGEID 127 (citing *Johnson v. Trugreen Limited Partnership*, No. A-12-cv-166-LY, 2013 WL 12120413 (W.D. Tex. May 21, 2013)). That decision undermines Shelton's argument. Even in that case, equitable tolling did not apply to the named plaintiffs. Rather, that court found that only the opt-in plaintiffs who "filed consent forms with this court, believing they were protecting their rights" established the "rare and exceptional circumstances" necessary to invoke equitable tolling. *Johnson*, 2013 WL 12120413, at *5-6. The court did not apply equitable tolling to the named plaintiffs in that action who signed the arbitration agreement. *Id.* at *6. Thus, Shelton has failed to establish the necessary exceptional circumstances required to invoke equitable tolling.

13

## VI. Costs And Expenses Should Not Be Ordered

Finally, Pappas requests that Shelton pay the attorneys' fees and costs Pappas incurred in filing the instant motion. According to Pappas, Shelton's counsel should have agreed to stay this action and proceed to arbitration as soon as Pappas's counsel sent Shelton's counsel the executed arbitration agreement on July 26, 2021. (Doc. 19-1 at PAGEID 106). Pappas contends that it is entitled to attorneys' fees and costs because Shelton's counsel, by failing to immediately proceed to arbitration, "multiplie[d] the proceedings in [this] case unreasonably and vexatiously." 28 U.S.C. § 1927. The Court disagrees.

Section 1927 "[s]anctions are warranted when an attorney engages in conduct that 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Magnesium Machine, LLC v. Terves, LLC*, Nos. 20-3779/3998, 2021 WL 5772533, at *6 (6th Cir. Dec. 6, 2021) (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1049 (6th Cir. 1996)). "In order to be sanctionable, the attorney's conduct must be demonstrated to be 'more than negligence or incompetence' but need not rise to the level of 'subjective bad faith.'" *Jones v. U-Haul Co.*, No. 2:13-cv-1265, 2014 WL 12894119, at *2 (S.D. Ohio Aug. 12, 2014) (quoting *Hall v. Liberty Life Assurance Co.*, 595 F.3d 270, 276 (6th Cir. 2010)). Sanctions under 28 U.S.C. § 1927 are intended to "deter and punish those who abuse the judicial process" rather than to compensate the moving party. *Id.* (quoting *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 647 (6th Cir. 2006)).

Plaintiff's counsel's refusal to agree to stay this matter and submit to arbitration does not rise to the level of improper conduct contemplated by 28 U.S.C. § 1927. While plaintiff's counsel's response to Pappas's motion to compel arbitration quoted cases out of context and

ignored controlling case law, Shelton's initial challenge to the arbitration agreement was at least colorable.  Therefore, attorneys' fees and costs should not be imposed against Shelton's counsel.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendant's motion to compel arbitration and dismiss this action  (Doc. 19) be **GRANTED** and this matter be **DISMISSED WITHOUT PREJUDICE**.
2. Defendant's request for fees and costs (Doc. 19) be **DENIED**.
3. Plaintiff's request for equitable tolling (Doc. 20) be **DENIED**.

Date:  1/18/2022

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| HEATHER SHELTON, on Behalf of Herself And All Others Similarly Situated, Plaintiff, | Case No. 1:21-cv-470 Dlott, J. Litkovitz, M.J. |
| vs. | |
| PAPPAS RESTAURANTS, INC., *et al.*, Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).